OPINION. Black, Judge: This proceeding raises two issues arising out of petitioner’s purchase of property from trustees who continued to receive rental income until February 7, 1946. These two issues may be stated as follows: 1. Were the amounts of rentals paid to the sellers of the property by the lessee, Cessna Aircraft Company, during 1945 and up to February 7,1946, taxable to petitioner because they were applied in part payment of the purchase price which petitioner had agreed to pay for the property ? 2. Is petitioner entitled to have deducted from his gross income in 1946 and 1947, amortization of $13,444.36 and $10,083.28, respectively, on account of a payment of $23,527.64 which he paid to the sellers of the property upon the execution of a “Receipt and Release” agreement executed February 7, 1946 ? Issue 1. Respondent determined that the entire property was purchased on April 18, 1945, for $75,000; $40,000 was paid in cash and petitioner assigned the rents to the sellers until August 15, 1947, to be applied toward the purchase price. But petitioner contends that the total consideration for his purchase on April 18,1945, was $40,000 and that the trustees, under written agreement, retained the income and possession of the property until August 15,1947. The proposed and rejected offers, testimony, and accounting-tax treatment indicate that each party intended or at least hoped that the Cessna rents would not be taxable income to him. Equally clear is the fact that the rental income is taxable to one, but only one, of the parties. In deciding who is taxable on these rental payments in 1945 and up to February 7,1946, we are concerned with the contracts which were executed by the parties in arm’s length transactions. “But the question of the legal effect of the contract upon income tax depends upon the contract itself, rather than upon circumstances motivating its execution.” See Wood Process Co., 2 T. C. 810, 816. The essential agreement that governed the original transfer of the property in question to petitioner was the contract of sale on April 18, 1945, and the deed on June 6, 1945. The deed and contract of sale are to be construed together. Livingston v. Story, 36 U. S. 351, 385-386; Goughran v. Bigelow, 164 TJ. S. 301, 310. The contract of sale is not ambiguous. The “consideration” was $40,000, and the trustees were “entitled to retain the possession of the above described premises and all rents and income accrued and to accrue under the lease above mentioned and for the period ending August 15,1947.” Thus, under this language the trustees retained possession and rents until August 15,1947, and transferred the remainder interests to petitioner. Under real property law interests may be carved up and any quantity may be transferred. The grantor can reserve rents for a term of years while transferring the fee and all other interests in Kansas. Pitts v. Blair Milling Co., 117 Kan. 626, 233 P. 114, 116; Tiffany, Keal Property, 3d ed. vol. 3 sec. 881, p. 532. The subsequent agreement dated June 11, 1945, merely confirms the retention of rents by the trustees and adds some new terms. That agreement could not constitute an assignment of rental income by petitioner until August 15, 1947, since petitioner did not own those rights at that time. He had never acquired them. “It is the general rule that an assignment at law will not be sustained unless the subject-matter has an actual or potential existence when the assignment is made * * Clendening v. Wyatt, 54 Kan. 523, 38 P. 792, 793. The conclusion that the rental income was legally retained by the trustees and initially only a remainder interest was purchased by petitioner does not by itself absolve petitioner from income taxes. In Corliss v. Bowers, 281 U. S. 376, 378, Mr. Justice Holmes stated: But taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed — the actual benefit for which the tax is paid. * * * The income that is subject to a man’s unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not. * * * Here, the trustees- not only retained the rents legally but they also retained control and benefits of ownership. Under the contract of sale on April 18, 1945, the trustees specifically agreed to pay property taxes, insurance premiums, and “all normal maintenance items and expenses,” so that the property would be delivered to petitioner in the present condition except for normal wear and tear. Furthermore, the June 11, 1945, agreement stated that in the event that the property was damaged or destroyed, and loss of income during the period of repair or reconstruction would be the trustees’ loss. It further provided that insurance proceeds would be devoted to restore and repair the property, except in the event of total destruction petitioner would have the option of rebuilding the premises or compensating the trustees for unpaid rent. Thus the trustees bore the risks of ownership of the rents and managed the property. Larger expenses or a cessation of rents were risks incurred by the trustees. Petitioner did not guarantee any fixed net profit nor have any other obligation to support the trustees’ contention that rents were payments on a $75,000 consideration. The rental income was not part of a debtor-creditor relationship; it was subject to the trustees’ unfettered command. A legal owner of property is not taxed on income which he has no legal rights to claim and does not control or receive any benefits therefrom. Similar conclusions were reached in the following cases. The owner of real estate who transferred rents only while retaining a reversion was not taxed on rents. United States v. First Nat. Bank of Birmingham, 74 F. 2d 360; Lum v. Commissioner, 147 F. 2d 356, affirming in part and reversing in part a Memorandum Opinion of this Court, February 26, 1944; Edward G. Swartz, Inc., 25 B. T. A. 1065, affd. 69 F. 2d 633; R. E. Nail, 27 B. T. A. 33. A purchaser of oil interests was not taxed on income which was retained either by a seller, Thomas v. Perkins, 301 U. S. 655, or by a mortgagee of a mortgage which was not assumed, J. Gregory Driscoll, 3 T. C. 494. We hold that petitioner is not taxable on the $7,172.36 rents which the Commissioner added to the income reported on his return for the year 1945. We also hold that he is not taxable on the $3,000 rentals which the Commissioner added to the income reported by petitioner on his return for 1946 and which $3,000 represented rentals 'collected by the sellers prior to the execution of the written instrument of February 7,1946, designated as “Receipt and Release.” Issue %. Petitioner returned as income on his 1946 and 1947 returns the amounts of the rentals which he received from Cessna subsequent to the execution of the “Receipt and Release” agreement of February 7, 1946. He, however, claims that these amounts represented income to him under a lease which he acquired from the sellers by assignment and that inasmuch as the lease with Cessna was to expire August 15, 1947, the $23,527.64 which he paid to the sellers upon the execution of the “Receipt and Release” instrument is amortizable over the remaining term of the lease. In pursuance of this claim, petitioner has deducted from the gross income reported on his 1946 return the sum of $13,444.36 as “Amortization of Basis of Acquiring Lease.” He has deducted from gross income reported on his 1947 return $10,083.28 as amortization with the same explanation as that given for 1946. The Commissioner has disallowed the foregoing amortization deductions. In disallowing the deductions, the Commissioner stated in his deficiency notice: The deduction claimed on your return as “Amortization of Basis of Acquiring Lease” in the amount of $13,444.36 is disallowed. Inasmuch as you were the owner of this property, the amount paid to the vendors in settlement of the unpaid balance on the purchase price may not be amortized. If it should be held that the rights to receive the rents represented an interest separate and apart from your purchase of the fee title to the property, then it is held that the payments, upon which the amortization deduction is based, represents additional cost of the property to be recovered only through depreciation or by the disposition of the property. As has already been explained under Issue 1, we have held that the rents prior to February 7, 1946, had been reserved by the sellers and did represent an interest separate and apart from petitioner’s purchase of the land and were not taxable to petitioner. However, we do not think that the same may be said of the rents which Cessna paid to petitioner after the execution of the “Receipt and Release” agreement. That agreement contains, among others, the following provisions: WHEREAS, the purchaser of said property has requested the privilege of paying the balance of the purchase consideration in cash at this time and assuming the immediate possession of the premises and the right to receive all rentals to accrue hereafter under the lease upon said premises, which request the sellers have, under the conditions hereinafter stated, agreed to. ******* On the execution of this agreement the First Parties acknowledge and agree that the full purchase consideration as provided under said agreement of April 18, 1945, shall have been fully paid and the title to the property described therein to be fully vested in the Party of the Second Part, including the full right of possession thereof, and to all rents hereafter to accrue under the outstanding lease on said property. Under the foregoing provisions of the “Receipt and Release” agreement, we think it should be held that the $23,527.64 payment which petitioner made on February 7, 1946, was made as respondent has determined, as “additional cost of the property” and is to be recovered through depreciation in so far as the improvements are concerned and not by way of amortization deductions over the remaining life of the Cessna lease, as petitioner claims in this proceeding. For tax purposes of depreciation, we see no difference between this situation and one in which real property, including the right to collect rent, was purchased subject to an outstanding lease. Petitioner here has done substantially the same thing, but in two steps. Subsequent to petitioner’s purchase under the “Receipt and Release” agreement of February 7, 1946, petitioner owned the fee simple of real property with all rights of possession except as to the Cessna lease. Respondent has allowed petitioner in each of the years 1946 and 1947 depreciation deductions of 3 per cent based upon a cost basis of $65,000 for the improvements on the property which petitioner purchased from the sellers. The pleadings do not raise any issue as to this rate of 3 per cent or the cost basis of $65,000 for the improvements situated on the property. Therefore, the allowances for depreciation which respondent has allowed in his determination of the deficiencies for the years 1946 and 1947 will remain undisturbed in a recomputation under Rule 50. The Commissioner is sustained in his disallowance of amortization of $13,444.36 for the year 1946 and in his disallowance of amortization of $10,083.28 for the year 1947. Decision will be entered under Rule 50.