No. 97,725

MARY RECTOR, *Appellant*, v. CLIFFORD TATHAM, PATRICIA DISQUE, and RUTH STRICKLAND, *Appellees*.

(195 P.3d 364)

Opinion filed November 21, 2008.

*Ronald Schneider*, of Lawrence, argued the cause and was on the briefs for appellant.

*Christopher F. Burger*, of Stevens & Brand, L.L.P., of Lawrence, argued the cause, and *Molly M. Wood*, of the same firm, was with him on the briefs for appellees.

The opinion of the court was delivered by

BEIER, J.: This appeal requires us to decide the propriety of the district court's dismissal of plaintiff Mary Rector's lawsuit against

her defendant siblings to enforce the terms of a mediated settlement agreement.

The handwritten agreement at issue—evidently arrived at in hope of resolving several ongoing disputes among Rector and her brother, Clifford Tatham, and her sisters, Patricia Disque and Ruth Strickland, regarding their mother's care and assets, including competing actions for guardianship and conservatorship—stated in pertinent part:

"3. [Plaintiff] agrees to purchase the home from her mother for $89,000. [Plaintiff] will assume the existing mortgage and pay her mother $42,900. If [plaintiff cannot] raise the $42,900, the home will be placed on the market and sold. The [proceeds] of sale will be held for [mother].

"4. [The parties agree] that the personal property will be sold. Costs of the appraisal and sale will be deducted from the sale of the personal property. The means of the sale will be by auction. . . .

"5. The parties agree that they will request the court to appoint Mike Davies as conservator of the assets of [mother]. The parties agree to petition to terminate the conservatorship once the assets have been collected and accounting has been made.

"6. The parties agree that the conservatorship and its successor arrangement will provide that in the event [mother] dies and funds remain, that the remaining balance will be payable on death to [plaintiff]."

The agreement was signed by all of the parties except Strickland on January 31, 2003. Strickland is now deceased.

After the parties' mother died in August 2003, the approximately $50,000 left in the conservatorship was distributed evenly among the siblings per their mother's will. The will is not included in the record before us in this action.

Rector then launched this action, alleging entitlement to the amounts distributed to her siblings. The defendants filed a motion to dismiss for failure to state a claim, arguing that K.S.A. 59-2249(a) permitted only three ways to distribute a decedent's estate: by will, by intestate succession, or by valid K.S.A. 59-102(8) settlement agreement. The January 31, 2003, agreement, in their view, did not meet the statutory requirements of a K.S.A. 59-102(8) settlement agreement and thus was unenforceable.

Rector's response to the motion to dismiss claimed that all parties had asked the district court judge to approve and incorporate

the agreement into the guardianship and conservatorship proceedings then before the court. She also asserted that she had performed all of her obligations under the agreement, including "conveying, by quit-claim deed, her ½ interest in her homestead to [mother], representing an estimated $45,000." Rector also stated that she had never alleged the agreement qualified as a valid settlement agreement under K.S.A. 59-102(8).

The district court judge granted the motion to dismiss, stating: "This agreement, if it is not, as plaintiff asserts, a settlement agreement under K.S.A. 59-102(8), attempts to bind parties to act in a manner contrary to Kansas law."

A panel of our Court of Appeals reversed the district court. In the panel's view, dismissal was error because Rector's petition could state a claim for assignment of an expectancy interest or for promissory estoppel. The panel rejected Rector's joint tenancy and incorporation arguments. We granted the defendants' petition for review of the reversal and remand on the assignment of expectancy interest and promissory estoppel theories.

The parties agree on our standard of review. When a district court has granted a motion to dismiss for failure to state a claim, an appellate court must accept the facts alleged by the plaintiff as true, along with any inferences that can reasonably be drawn therefrom. The appellate court then decides whether those facts and inferences state a claim based on plaintiff's theory or any other possible theory. If so, the dismissal by the district court must be reversed. *Nungesser v. Bryant*, 283 Kan. 550, 559, 153 P.3d 1277 (2007).

In addition, we have observed that factual disputes cannot be resolved or decided on a motion to dismiss for failure to state a claim. Judicial skepticism must be exercised when the motion is made before the completion of discovery. Under Kansas' notice pleading, the petition is not intended to govern the entire course of the case. Rather, the ultimate decision as to the legal issues and theories on which the case will be decided is the pretrial order. *Halley v. Barnabe*, 271 Kan. 652, 656-57, 24 P.3d 140 (2001). A motion to dismiss typically is filed early in a case, when many of

the facts have not yet been discovered and legal theories may be in flux. *ARY Jewelers v. Krigel*, 277 Kan. 27, 38, 82 P.3d 460 (2003).

As defendants did before the district court and Court of Appeals, they initially assert that K.S.A. 59-2249(a) permits only three ways to distribute a decedent's estate. The statute provides:

"Upon settlement and allowance, the court shall determine the heirs, devisees and legatees entitled to the estate and assign it to them by its decree, pursuant to the terms of the will, the laws of intestate succession in effect on the date of the decedent's death or a valid settlement agreement. . . . The decree shall be binding as to all the estate of the decedent, whether specifically described in the proceedings or not."

Defendants cite one case to support this argument, *In re Estate of Leathers*, 19 Kan. App. 2d 803, 876 P.2d 619 (1994). In that brief opinion, a panel of our Court of Appeals considered a settlement agreement entered into after the death of a testator. They held that the agreement was unenforceable because it was not one of the three exclusive methods for distributing a decedent's estate under K.S.A. 59-2249(a); it lacked the necessary formalities to qualify as a valid family settlement agreement under K.S.A. 59-102(8). *Leathers*, 19 Kan. App. 2d at 804. K.S.A. 59-102(8) defines a valid settlement agreement as "a written and acknowledged instrument which affects the administration or distribution of the estate and which is entered into by all interested heirs, devisees, legatees and persons whose interests are affected by the settlement agreement, all of whom must be competent or authorized to enter into such agreement."

Defendants' reading of K.S.A. 59-2249(a) and the *Leathers* case provide the foundation for their further assertion that the January 31, 2003, agreement fails to meet the requirements of a valid agreement under K.S.A. 59-102(8). The agreement at issue here, they argue, purports to dispose of their mother's assets on death, and one of her heirs did not sign it, and none of the signatories acknowledged it, both required formalities.

The first problem with this argument is that it misses the point of Rector's petition and ignores a pivotal factual distinction between this case and *Leathers*. Rector does not assert that the agreement signed by herself and two of her siblings on January 31, 2003,

is a valid family settlement agreement under K.S.A. 59-102(8); she does assert that it is an enforceable contract independent of its probate context. And, unlike the agreement at issue in *Leathers*, the agreement before us here was not entered into after the death of the testator; it was entered into months before the parties' mother died. Rector may sue for what she regards as a breach of contract, specifically, the defendants' failure to abide by their assignment of their expectancy interests, as long as such a cause of action is viable in Kansas.

Defendants attempt to discount the precedential value of three cases cited by the Court of Appeals to support the continued existence of such a cause of action.

In the first of the three cases, *Clendening v. Wyatt*, 54 Kan. 523, 38 Pac. 792 (1895), John Clendening and his wife assigned their expectancy interests in his mother's estate to a third party in exchange for $2,500. This court held that an assignment of an expectancy interest is valid if the contract is fair, if adequate consideration is given, and if the contract is neither unconscionable nor induced by fraud. *Clendening*, 54 Kan. at 524-25.

The second case, *Knutson v. Hederstedt*, 125 Kan. 312, 264 Pac. 41 (1928), expanded on the rule of *Clendening* to enforce an assignment of an expectancy interest in a contingent remainder. In *Knutson*, a father bequeathed certain land to his son, Carl. The father's will stated that the land would pass to Carl's children at the time of Carl's death. If Carl died without children, the land would revert to the father's heirs. Plaintiff Knut, the second son of the father, had assigned his interest in his potential inheritance to a third party. When Carl died without children and the land that had gone to him reverted to the father's heirs, Knut argued that he had not assigned an expectancy interest. This court disagreed, holding that Knut could validly assign his interest in the contingent remainder from his father's estate. *Knutson*, 125 Kan. at 313-318.

The third case, *Chatterton v. Clayton*, 150 Kan. 525, 95 P.2d 340 (1939), began with a promissory note executed and delivered by O.M. Clayton and his wife to Herbert Miller. When Miller died, the administrator of his estate sought to garnish O.M.'s share of his father's estate, which O.M. had assigned to Miller State Bank.

The bank intervened in the garnishment proceeding, and we upheld a district court judgment in its favor. We stated broadly:

"Any sort of right or interest in property, whether vested or contingent, may be the subject of barter and sale. [Citation omitted.] An expectancy is ordinarily assignable. [Citations omitted.] No particular form or mode of conveyance is necessary to effect a valid assignment, if the intent to transfer and make over to another certain property is clearly established." *Chatterton*, 150 Kan. at 526.

Defendants point out that these three cases dealt with fewer than all of the heirs of a testator and with assignments to third parties rather than assignments among heirs. These observations are accurate, but they do not undercut the general holdings of the cases. All three recognized the validity of assignments of expectancy interests and Kansas courts' enforcement of them, as long as the assignments were fair, were supported by consideration, were not induced by fraud, and were clearly indicative of the intention of the parties. In short, Kansas follows the weight of authority in recognizing a cause of action based on an heir's assignment of an expectancy interest. See 29 Williston on Contracts § 74:20 (4th ed. 2003).

Two more recent cases from our Court of Appeals also lend peripheral support to our decision on this issue. These cases, *Johnson v. Johnson*, 26 Kan. App. 2d 321, 323, 988 P.2d 244 (1999); and *Johnson v. Johnson*, 7 Kan. App. 2d 538, 543, 645 P.2d 911, *rev. denied* 231 Kan. 800 (1982), recognized the controlling power of a settlement agreement over prior and subsequent trust provisions when the settlement agreement was entered into by the trust's settlor before the settlor's death. Here, the settlement agreement, allegedly including the assignment of defendants' expectancies to Rector, was entered into before the death of the parties' mother.

We are also persuaded that such assignments may be effected among heirs. In this, we are supported by two cases from sister jurisdictions, one of which was cited by Rector, *Dyblie v. Dyblie*, 389 Ill. 326, 59 N.E.2d 657 (1945). In *Dyblie*, the Supreme Court of Illinois enforced an assignment from one brother to another of "an undivided one-half interest in and to the personal property to every kind whatsoever" that he would receive as an heir from their

mother. *Dyblie*, 389 Ill. at 327. In *Lena v. Yannelli*, 78 N.J. Super. 257, 260, 188 A.2d 310 (1963), a New Jersey court upheld an assignment of a son's expectancy interest in his mother's estate to his sisters and brother. We have found no cases disallowing an assignment of an expectancy interest from one heir to another.

Before we leave this issue, we note that defendants also assert that the legislature made a deliberate choice to change K.S.A. 59-2249(a) in 1985 to eliminate the theory of assignment of expectancies from Kansas law. We see nothing in the plain language of the statute to demonstrate this intention. And defendants direct us to no legislative history that does so. Rather, we rule today that such assignments remain possible within and outside of probate contexts.

Obviously, today we do not decide the merits of Rector's assignment claim. That decision must follow full factual development in the district court. We rule only that her petition stated a claim based on the assignment theory and that her lawsuit should not have been dismissed on the pleadings as a matter of law. Although defendants do not appear to dispute that the January 31, 2003, agreement was supported by adequate consideration, further proof and argument on this and other salient points of fact and law will now proceed.

We also agree with the Court of Appeals panel that Rector's lawsuit should have survived the defendants' motion because of the potential for proof of promissory estoppel.

" 'The doctrine of promissory estoppel may render enforceable any promise upon which the promisor intended, or should have known, that the promisee would act to his detriment, and which is indeed acted upon in such a manner by the promisee, where application of the statute of frauds to that promise would thus work a fraud or gross injustice upon the promisee.' " *Bittel v. Farm Credit Svcs. of Central Kansas, P.C.A.*, 265 Kan. 651, 661, 962 P.2d 491 (1998) (quoting *Decatur Cooperative Association v. Urban*, 219 Kan. 171, Syl. ¶ 5, 547 P.2d 323 [1976]).

Although the petition did not explicitly plead the applicability of this doctrine, Rector should have avoided dismissal on the chance that she may be able to meet her burden of proof on that theory.

Finally, defendants also argue that Rector pursued *only* a breach of contract action in district court and thus should be foreclosed on appeal from arguing that the January 31, 2003, agreement constituted an assignment of expectancy interest or that she is deserving of relief under the doctrine of promissory estoppel. This argument is meritless when our standard of review after grant of a motion to dismiss is considered. As discussed above, the Court of Appeals, and now this court, must accept the facts as alleged by Rector and decide whether they could support any theory of recovery. If so, we are compelled to reverse the district court's dismissal.

We thus affirm the Court of Appeals and reverse the district court. This case is remanded to the district court for further proceedings consistent with this decision.