NOT DESIGNATED FOR PUBLICATION

No. 122,648

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PATRICK H. DOYLE,
*Appellant*,

v.

NORDSTROM NA,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed January 8, 2021.
Affirmed.

*Patrick Doyle*, appellant pro se.

*Douglas P. Hill*, of Baker Sterchi Cowden & Rice LLC, of Kansas City, Missouri, for appellee.

Before BUSER, P.J., ATCHESON, J., and BURGESS, S.J.

PER CURIAM: Patrick Doyle brought suit against Nordstrom, a department store, for causing him an increased tax bill by reporting the cancelation of a $34,956.81 credit card debt, which was assigned to Doyle in his divorce nearly a decade prior. Doyle appeals from the district court's grant of judgment on the pleadings in favor of Nordstrom as well as the court's denial of his motion to alter or amend judgment. In granting the motion, the district court noted that each of the counts included in Doyle's complaint were barred because they were based on statutes that did not provide private causes of action or were otherwise procedurally barred. The court further ruled that even if Doyle's petition was construed broadly as an action for civil fraud, he had failed to allege the required elements, and even if he had done so the action would have been barred under

1

the two-year statute of limitations. Doyle then filed a motion to alter or amend judgment, which was denied. Doyle also contends that the district court erred in interpreting his divorce decree—he claims that he was never ordered to assume the Nordstrom account—but because the decree was not included in the record on appeal, this court cannot effectively review his claim. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Patrick and Elizabeth Doyle married in 1989. In 1994, Nordstrom extended a credit account in Elizabeth's name. The Doyles' marriage did not last, and the couple's divorce was finalized in 2007. In the divorce decree issued in July 2007, Patrick was ordered to take responsibility for the debt on the Nordstrom account. The account had an outstanding balance of $34,956.81, incurred between 2005 and 2007.

Around the time of the divorce, Nordstrom received instruction to transfer the indebted account to Patrick Doyle. Nordstrom did so. In December 2016, with the debt still unpaid, Nordstrom filed with the IRS and issued to Doyle a Form 1099-C, which represented the cancellation of the debt on the account. As a result, Doyle was assessed an additional $13,000 tax obligation.

In January 2019, Patrick Doyle filed a pro se "complaint" in Wyandotte County District Court, alleging Nordstrom fraudulently caused him an increased tax liability by reporting the discharge of the $34,956.81 debt. Doyle set forth five counts in his complaint, including: (1) "Nordstrom Visa created an account and transferred funds in [his name] without [his] knowledge or authorization" in violation of the Consumer Financial Protection Act (CFPA); (2) "Nordstrom Visa issued a 1099C in [his name] for the false account created in Count 1" in violation of the CFPA; (3) "Nordstrom Visa refused to correct the false 1099C after being appraised of the Internal Revenue Service Treasury Regulation Section 1.6050P-1(7)," a violation of 26 U.S.C. § 7206 (2018)—a

2

federal criminal statute for fraud; (4) "Nordstrom Visa issued a 1099C in [his name] for the false account created in Count 1" in violation of K.S.A. 79-3228(e)—a Kansas criminal statute for fraudulent tax filings; and (5) a claim for punitive damages.

Nordstrom filed an answer, noting that none of the statutes Doyle cited provided a private cause of action upon which civil liability could be based. Nordstrom also maintained that Doyle had failed to state a claim for which relief could be granted, argued the court lacked personal jurisdiction, contended service was improper, that venue was improper, that Doyle lacked standing, and that, even if it were to be construed as a claim of civil fraud, Doyle's cause of action would be barred under the applicable two-year statute of limitations. Nordstrom also claimed Doyle failed to make allegations with sufficient particularity and noted that Doyle had been ordered to assume the debt in the 2007 divorce decree. Doyle would later take the position that the substance of his petition alleged that Nordstrom had committed a civil fraud.

Nordstrom moved for judgment on the pleading, arguing Doyle failed to state any viable cause of action. At the hearing on Nordstrom's motion, the court asked Doyle where in his petition he had included allegations of the elements of fraud with specificity. Doyle replied, "Well, you're the expert at this, and, if you don't find them, then they aren't there." When questioned about basing his claims in his petition on criminal statutes, Doyle responded: "Well, I understand now that the Court doesn't recognize those in a civil case."

The district court granted Nordstrom judgment on the pleadings. The court explained "that in the original complaint filed by the plaintiff [he] fails to state a cause of action as the basis of his actions are either federal statutes or state criminal statutes, none of which are applicable to this lawsuit." The court further noted that Doyle's request for punitive damages was improperly included in his initial petition and that even if Doyle's complaint were treated as a claim of civil fraud, it would be time-barred under the two-

3

year statute of limitations. The court took judicial notice of Doyle's divorce decree, commenting, "The decree is clear that the debt to Nordstrom was assigned to Mr. Doyle, which, of course, affects the complexion of this lawsuit completely." The court further commented that

"Mr. Doyle's allegations that somehow his wife or someone in Nordstrom's were working together to defraud him is completely without basis based upon the journal entry or decree of divorce that was entered in 2005 in Johnson County for clearly the debt to Nordstrom's was to be paid by Mr. Doyle."

After Doyle expressed some confusion about the court's ruling, the following exchange occurred:

"MR. DOYLE:  I'm confused, but that's all I have to say.
"THE COURT:  I'll be happy to answer any questions that you have.
"MR. DOYLE:  Did you read page 6 of the divorce decree?
"THE COURT:  I read it two or three times, Mr. Doyle, and to be quite candid with you it seemed so abundantly clear that you were to pay for that because of back due maintenance payments that you had not made and something else that the Court put in there that I don't see how [there] could be any confusion that you were to pay those debts.
The Court clearly identified them as the respondent's debts, which you were to pay.
"MR. DOYLE:  Well, that's not the letters on page 6?
"THE COURT:  We'll agree that we disagree.
"MR. DOYLE:  Okay.
"THE COURT:  Any other questions?
"MR. DOYLE:  I apologize for misleading the Court.
"THE COURT:  I'm hopeful that it was unintentional, Mr. Doyle."

4

Doyle filed a motion to alter or amend judgment, in which he claimed the district court's interpretation of his divorce decree was erroneous and constituted an abuse of discretion that was "procured by corruption by the [defendant]." The district court denied Doyle's motion. Doyle timely appealed.

## ANALYSIS

*The district court did not err in granting Nordstrom's motion for judgment on the pleadings.*

On appeal, Doyle argues the district court erred in granting Nordstrom judgment on the pleadings because his petition sufficiently alleged each of the five elements of civil fraud. Doyle further contends the court erred in finding his petition was barred by the two-year statute of limitations for actions for civil fraud under K.S.A. 60-513.

Appellate courts exercise unlimited review when considering whether a district court properly granted a motion for judgment on the pleadings. Such a motion filed under K.S.A. 2019 Supp. 60-212(c) is based on the premise that the moving party is entitled to judgment based upon the admitted facts and the pleadings themselves. The motion acts as an admission by the movant of all factual allegations in the opposing party's pleadings. This court presumes the facts alleged in the petition are true, leaving the basic question of whether the plaintiff has stated a viable cause of action. *Mashaney v. Board of Indigents' Defense Services*, 302 Kan. 625, 638, 355 P.3d 667 (2015); *Rector v. Tatham*, 287 Kan. 230, Syl. ¶ 1, 196 P.3d 364 (2008). In other words, when ruling on a motion for judgment on the pleadings, the court accepts the factual representations in the pleadings and asks whether those representations, along with any reasonable inferences drawn from them, would warrant relief for the plaintiff on *some* legal theory. If there is some basis for recovery, the motion should be denied. If the pleadings show that no viable cause of action exists, the motion should be granted. *Rector*, 287 Kan. 230, Syl. ¶ 1.

The district court's decision granting Nordstrom judgment on the pleadings was three-fold. First, the court noted that counts one and two were barred because the CFPA does not provide a private cause of action, counts three and four were barred because they were based on criminal statutes that do not provide a private cause of action, and count five was barred because punitive damages may not be sought in an initial proceeding. Second, the court found that even if Doyle's petition were read more broadly—i.e., interpreted as an action for civil fraud—Nordstrom would nevertheless be entitled to judgment on the pleadings because Doyle did not sufficiently plead the required elements, let alone plead them with the required particularity. Finally, the court noted that Doyle's action—if treated as a claim of civil fraud—was nonetheless time-barred under the two-year statute of limitations.

*The five claims in Doyle's petition were all barred as a matter of law.*

On appeal, Doyle does not dispute that none of the counts included in his "complaint" explicitly asserted that Nordstrom committed a civil fraud, that the claims in his petition were barred as a matter of law because the statutes did not provide for private causes of action, or that a claim for punitive damages could not be brought in an initial pleading. In fact, at the hearing on Nordstrom's motion for judgment on the pleadings, Doyle conceded that his claims as pleaded were not actionable. Because Doyle has not argued that the court erred in this respect, this issue is waived or abandoned. See *Russell v. May*, 306 Kan. 1058, 1088-89, 400 P.3d 647 (2017).

*Even if construed as a general claim of civil fraud, Doyle's petition did not sufficiently allege the required elements.*

Although Doyle did not specifically allege that Nordstrom committed a civil fraud, the district court found that "[e]ven if [Doyle's] pleading is treated more generally as an action for civil fraud, [Nordstrom] would still be entitled to judgment on the pleadings"

because Doyle had failed to allege "any of the required elements of a civil action for fraud." The court further noted that Doyle's pleading fell "far short of the heightened pleading standards applicable to fraud actions, under K.S.A. 60-209(b)."

The elements of a civil action for fraud include:

"(1) false statements were made as a statement of existing and material fact; (2) the representations were known to be false by the party making them or were recklessly made without knowledge concerning them; (3) the representations were intentionally made for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations made; and (5) the other party sustained damage by relying upon them." *Kelly v. VinZant*, 287 Kan. 509, 515, 197 P.3d 803 (2008).

See PIK Civ. 4th 127.40.

While the Kansas Rules of Civil Procedure generally provide for notice pleading, a plaintiff alleging fraud as a cause of action must state the circumstances constituting fraud with particularity. K.S.A. 2019 Supp. 60-209(b); *Newcastle Homes, LLC v. Thye*, 44 Kan. App. 2d 774, 788, 241 P.3d 988 (2010).

On appeal, Doyle argues that he sufficiently alleged each of the required elements of fraud with particularity in his pleading. Doyle's argument fails because, as the district court correctly found, his pleadings do not even allege the foundational element of a false statement about an existing and material fact, let alone every other element of fraud.

Doyle contends that his petition alleged that Nordstrom made a false statement of existing and material facts by creating an "account without knowledge or authorization." The portion of the petition Doyle points to refers only to "'unfair' acts or practices" and does not specifically allege any false statement made by Nordstrom. Moreover, Doyle's

7

pleadings—even when read broadly—do not substantiate that Nordstrom ever made any untrue statement of fact. The indebted account in question, which was originally in Doyle's ex-wife's name, was assigned to Doyle in his divorce decree, thus belying his attempt to claim that Nordstrom somehow acted fraudulently or made any false assertions in filing the 1099-C form. In other words, Doyle's claim that Nordstrom falsified the account information is unsupported because the "statement" was not false and therefore could not support a claim of fraud. Because Doyle's pleading fails to set forth any basis to support the foundational element of a claim for fraud of making a false statement, Nordstrom was entitled to judgment on the pleadings.

Beyond his failure to allege a false statement, Doyle's pleading lacks several other necessary elements of a claim for civil fraud. Doyle claimed that Nordstrom knowingly made false representations because the company sent him a letter noting that he had taken "ownership of the Nordstrom Visa credit card" in 2007 after his divorce. This letter, even when viewed in a light favorable to Doyle, does not support his contention that Nordstrom knowingly made a false statement. Even if Doyle were not responsible for the indebted account, he does not contend that Nordstrom alerted him of the amount owed knowing that his ex-wife was in fact the debtor. Moreover, Doyle's pleadings do not set forth a basis to find that Nordstrom intended to induce him to act. While Nordstrom informed Doyle that it believed it had correctly issued the 1099-C form in his name in its letter, Doyle does not explain how Nordstrom intended to induce him to act or how he relied on this assertion to his detriment. Ultimately, Doyle merely makes conclusory statements regarding the elements of fraud cobbled together from his original pleading which consisted of claims based on the CFPA and criminal statutes. Doyle did not state any particularized facts that could have amounted to a viable action for fraud.

The district court did not err in finding that Doyle failed to allege the required elements of fraud and did not meet the specificity requirements for such a claim.

*Even if Doyle pleaded the required elements of fraud, his action would have been barred under the two-year statute of limitations.*

Finally, the district court ruled that even if Doyle had pleaded the required elements of civil fraud with sufficient particularity, his claim would nonetheless have been time-barred under the applicable statute of limitations. Doyle contends the district court's decision was erroneous because "reasonable persons could reach different conclusions on whether the statute of limitation[s] tolls from the mailing of the 1099-C . . . or the resulting IRS decision to assess [him] taxes on the 1099-C income."

Whether the district court appropriately applied the statute of limitations for an action for civil fraud under K.S.A. 60-513 presents a question of statutory interpretation, subject to unlimited review. *Mashaney*, 302 Kan. at 630. "The statute of limitations for fraud is 2 years and accrues at the time the fraud is discovered." *Kelly*, 287 Kan. at 527; see K.S.A. 60-513(a)(3) ("The following actions shall be brought within two years: . . . An action for relief on the ground of fraud, but the cause of action shall not be deemed to have accrued until the fraud is discovered."). This court has previously explained,

> "The law in Kansas is clear that a plaintiff must file his or her fraud claim within 2 years of discovering the fraud if plaintiff suffered ascertainable injury at that time. If not, plaintiff must file within 2 years of when substantial injury resulting from the fraud is reasonably ascertainable." *Ives v. McGannon*, 37 Kan. App. 2d 108, 114, 149 P.3d 880 (2007).

To avoid the statute of limitations bar, a plaintiff must demonstrate that the fraud could not be detected "through reasonable diligence." 37 Kan. App. 2d at 115.

Doyle contends that the district court erred because the date that the statute of limitations could have begun was either from the date he received the 1099-C form or from the date the IRS decided to assess him taxes on the forgiven debt reported in the

9

1099-C form. In the first instance, his claim would have been barred; in the second instance, the statute of limitations would not have fully run. This argument is different than Doyle's assertions in his petition. As Nordstrom points out, Doyle's petition specifically stated that his injury became "reasonably ascertainable" on April 5, 2017, when he was "informed of the fraud" by a Nordstrom representative via the letter clarifying the company's position regarding the account. Doyle's pleading also notes that he received the 1099-C form more than six months prior, in December of 2016. If Doyle's assertion that the 1099-C form was fraudulently sent to him, any injury resulting from that fraud was reasonably ascertainable at that time. The injury of being held responsible for the debt as taxable income by the IRS would have been ascertainable at that time. Doyle stated that he knew what a 1099-C form was, and immediately notified Nordstrom by "making phone calls and correspondence" about the alleged error after receiving the form in 2016.

Because Doyle had knowledge of the fact of exposure to an increased tax liability when Nordstrom furnished the 1099-C form in December 2016, the statute of limitations for any fraud action began to run at that time. The district court did not err in finding that Doyle's action was filed on January 24, 2019, more than two years after he received the tax document upon which any claim for fraud would be reasonably ascertainable. Even if Doyle had sufficiently stated a cause of action for fraud, or if the district court had generously given a pro se party the opportunity to amend his pleadings, Doyle brought his claim outside of the statute of limitations period.

*The district court did not abuse its discretion in denying Doyle's motion to alter or amend judgment.*

Next, Doyle contends the district court abused its discretion in denying his motion to alter or amend because the judgment "was procured by corruption" and because the court abused its discretion in interpreting his divorce decree.

Appellate courts review a district court's denial of a motion to alter or amend judgment under K.S.A. 2019 Supp. 60-259(f) for an abuse of discretion. *Wenrich v. Employers Mutual Ins. Companies*, 35 Kan. App. 2d 582, 585, 132 P.3d 970 (2006). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable, i.e., no reasonable person would agree with the view adopted by the court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

The purpose of a motion to alter or amend is to provide an opportunity for the district court to correct a prior error. Such a motion is not an opportunity to present additional evidence that could have been previously submitted prior to entry of the final order. *Ross-Williams v. Bennett*, 55 Kan. App. 2d 524, 564, 419 P.3d 608 (2018). Here, Doyle's argument on appeal and the argument he set forth in his motion rests upon his assertion that the district court erred in interpreting his divorce decree, which he contends was caused by Nordstrom's misconduct.

The district court's interpretation of Doyle's divorce decree was the focal point of Doyle's motion to alter or amend judgment. Put simply, the district court found that the decree explicitly stated that Doyle was responsible for the Nordstrom account. Doyle disagrees with this interpretation. Doyle does not offer any reasoning as to how the court abused its discretion other than his conclusory assertion that Nordstrom procured the decision by corruption. Further, he has failed to designate the decree of divorce as part of

11

the record on appeal. This court cannot effectively review whether the district court's interpretation of the decree of divorce was erroneous in light of the decree's absence from the record.

Doyle cannot show that the district court abused its discretion in denying his motion to alter or amend judgment.

*The district court did not err in interpreting Doyle's decree of divorce and finding he was ordered to assume responsibility for the indebted Nordstrom account.*

Finally, Doyle argues the district court erred in ruling that his decree of divorce ordered him to assume responsibility for the indebted Nordstrom account. Specifically, Doyle argues "[t]he court falsely assert[ed] the Decree passes responsibility for the Nordstrom bank account from Elizabeth Doyle to Patrick Doyle." He seems to assert that the district court reversed, or altered, the divorce decree. While Doyle appears to cite particular pages and paragraphs of the decree of divorce, the document itself is not included in the record on appeal.

As Doyle is challenging the district court's interpretation of his divorce decree, a written instrument, this court is presented with a question of law over which it exercises unlimited review. See *Einsel v. Einsel*, 304 Kan. 567, 579, 374 P.3d 612 (2016). If the district court "relied on an erroneous interpretation of that written instrument it would constitute an abuse of its discretion." 304 Kan. at 579.

As Doyle is the party alleging the district court's interpretation of his divorce decree was erroneous, it was his burden to designate a record sufficient for this court to evaluate his claims. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013); *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 623-24, 244 P.3d 642 (2010) (party asserting an argument has the responsibility for providing a record

12

on appeal sufficient to support the argument). Simply making reference to the decree of divorce in his brief does not make the decree of divorce part of the record that can be considered for appellate review. See *Rodriguez v. U.S.D. No. 500*, 302 Kan. 134, 144, 351 P.3d 1243 (2015); see also Supreme Court Rule 6.02(b) (2020 Kan. S. Ct. R. 34). In both the journal entry of judgment and at the hearing on Nordstrom's motion for judgment on the pleadings, the district court took judicial notice of Doyle's divorce decree and noted that it plainly states that Doyle was "to assume sole responsibility for the underlying Nordstrom charge account." Because Doyle has failed to include the decree of divorce as part of the record, this court is unable to consider whether the district court's interpretation was erroneous.

Affirmed.

\* \* \*

ATCHESON, J., concurring:  I concur in the judgment affirming the Wyandotte County District Court's dismissal of Patrick H. Doyle's civil action against Nordstrom. But I do so on a far narrower basis than does the majority. Doyle, who is not a lawyer, has represented himself throughout the case. And his efforts reflect yet another example of a legal-do-it-yourselfer undermining his or her own cause.

As outlined in the majority opinion, when Doyle and his wife divorced some 13 years ago, the Johnson County District Court divided their assets and liabilities in the decree. Doyle's wife had run up a significant obligation on her credit card with Nordstrom. The company understood Doyle was to pay the credit card debt under the terms of the divorce decree, and he never did. Nordstrom wrote off the amount as uncollectible in 2016 and issued a 1099-C Form to Doyle that December. As I understand tax law, the write-off effectively created taxable income for Doyle equal to the credit card debt. Nordstrom, in turn, reported that income with the 1099-C Form. After receiving the

13

form, the Internal Revenue Service and other government agencies eventually came calling, and Doyle was saddled with a significant tax obligation. Based on the record in this case, Doyle believed the divorce decree did not require him to pay the credit card debt due Nordstrom.

In January 2019, apparently after settling the tax obligations, Doyle filed this action against Nordstrom to recover damages he ostensibly sustained because the company wrongfully issued the 1099-C Form to him. In his petition (that he incorrectly titled a complaint), Doyle identified four statutory claims for relief and a fifth claim that appears to seek punitive damages without identifying an underlying legal wrong supporting those damages. Nordstrom duly answered, denying any liability. The company filed a motion for judgment on the pleadings, as provided in K.S.A. 2019 Supp. 60-212(c).

The district court held a hearing on Nordstrom's motion at which Doyle and lawyers representing the company appeared. The transcript indicates that part way through the hearing the district court electronically accessed the Doyles' divorce decree and reviewed its terms. Doyle did not object but argued the decree assigned the credit card debt to his wife. The district court disagreed and found the decree clearly obligated Doyle to pay the Nordstrom account. The district court granted Nordstrom's motion and dismissed this case.

In granting Nordstrom's motion to dismiss, the district court liberally construed Doyle's petition to include a common-law claim for fraud in addition to the claims he more explicitly asserted. On appeal, Doyle has argued only for reversal of the district court's ruling dismissing the implicit fraud claim. He has abandoned the other claims.

14

In ruling on Nordstrom's motion, the district court dismissed the fraud claim because it had not been pleaded with particularity, as required in K.S.A. 2019 Supp. 60-209(b), and because the petition established a statute of limitations bar. But the pleadings do not support a dismissal of the fraud claim on the merits for those reasons. In addition, however, the district court concluded the divorce decree obligated Doyle to pay the Nordstrom credit card debt—factually precluding a fraud claim against Nordstrom for writing off the debt and issuing a 1099-C Form to Doyle. The district court erred in the way it considered the decree in granting Nordstrom's motion. But Doyle did not object in the district court and has furnished an inadequate record on appeal for us to consider the substantive implications of that error. The appellate record, therefore, supports the district court's ruling based on the terms of the divorce decree. For that reason alone, I concur in the result.

Assuming Doyle's petition included a claim for fraud at all—an assumption I indulge only because the district court did—then the claim should not have been dismissed on the merits for a pleading deficiency. The district court should have allowed Doyle the opportunity to replead in an amended petition in this case or dismissed this action without prejudice, permitting him to file a new case with a better petition. The former would have been the preferable option, especially since the case had not progressed deep into discovery and the lack of particularity in the petition theoretically was a correctable shortcoming. See K.S.A. 2019 Supp. 60-215(a)(2) (district court "should freely give leave" to amend petition); *Johnson v. Board of Pratt County Comm'rs*, 259 Kan. 305, Syl. ¶ 15, 913 P.2d 119 (1996). The Kansas Supreme Court recently reemphasized that procedural rules should be reasonably construed to promote the disposition of legal disputes on their merits. *In re Estate of Lentz*, 312 Kan. ___, 2020 WL 7294514, at *8 (2020).

The district court also concluded Doyle's fraud claim was time barred. In the petition, Doyle alleged he received the 1099-C Form from Nordstrom in December 2016.

15

Doyle filed this action on January 24, 2019. Under K.S.A. 60-513(a)(3), the statute of limitations for fraud is two years. That subsection also provides a fraud claim accrues when the fraud "is discovered." K.S.A. 60-513(a)(3). And K.S.A. 60-513(b) states the causes of action outlined in K.S.A. 60-513(a) do not accrue until the wrongful act "first causes substantial injury" or "the fact of injury becomes reasonably ascertainable." Read in tandem, those statutory provisions require both discovery and material injury to trigger the limitations period for fraud. We recognized as much in *Bryson v. Wichita State University*, 19 Kan. App. 2d 1104, 1107, 880 P.2d 800 (1994), holding that a cause of action for fraud accrues upon discovery only if the party has suffered "an ascertainable injury" at that point. And if not, the fraud claim doesn't accrue until there has been such an injury. We affirmed that application of K.S.A. 60-513 in *Ives v. McGannon*, 37 Kan. App. 2d 108, 114, 149 P.3d 880 (2007).

I believe *Bryson* and *Ives* have correctly construed K.S.A. 60-513 to require both discovery of the fraud and recognition of substantial injury to start the two-year limitation period. There is no inherent conflict in an accrual rule requiring both discovery and injury—they are not mutually exclusive and do not otherwise create some legal impossibility preventing the running of the limitations period. By its nature, fraud involves aspects of willfulness and deception and may be more blameworthy than, say, negligence. A discovery component for the accrual of the statute of limitations aims to prevent a person particularly adept at fraud from getting away with it through a combination of ingenuity and the lapse of time, especially when the victim recognizes the injury or harm but not the cause.

In its journal entry of judgment, the district court acknowledged the rule in *Ives* but never satisfactorily explained how Doyle's receipt of the 1099-C Form constituted a legal injury or harm. On Doyle's theory of fraud, he knew the 1099-C Form was wrongful when he received it. The pleadings, however, do not show when the IRS first demanded additional taxes from him or that he suffered any injury before then. Accordingly, the

16

pleadings do not establish an insuperable statute of limitations bar supporting dismissal under K.S.A. 2019 Supp. 60-212(c). The district court erred in dismissing the fraud claim on that basis.

At the hearing on the motion to dismiss, the district court reviewed the Doyles' divorce decree. The district court did so without a request from either Doyle or Nordstrom and went outside the scope of the pleadings to look at the document. By considering materials beyond the petition and answer, the district court effectively converted Nordstrom's motion to dismiss to one for summary judgment. See K.S.A. 2019 Supp. 60-212(d); *Sperry v. McKune*, 305 Kan. 469, Syl. ¶ 3, 384 P.3d 1003 (2016); *Lehman v. City of Topeka*, 50 Kan. App. 2d 115, 117-18, 323 P.3d 867 (2014). Having done so, the district court should have expressly allowed Doyle and Nordstrom the opportunity to submit any other evidence they might have wanted considered for summary judgment purposes. K.S.A. 2019 Supp. 60-212(d); *Sperry*, 305 Kan. 469, Syl. ¶ 4.

Doyle properly could have objected to the district court considering the decree in ruling on Nordstrom's motion to dismiss or he could have asked to offer other evidence bearing on the terms of the decree and, in particular, the Nordstrom debt. He did neither. Rather, as I have indicated, Doyle argued that the decree assigned the Nordstrom debt to his wife—that, after all, was the ostensible factual predicate for his claim that the 1099-C Form was fraudulent. Based on its review of the decree, the district court concluded the decree plainly assigned the debt to Doyle. The district court relied on its reading of the decree as a tertiary reason for granting the motion to dismiss.

On appeal, Doyle has disputed the district court's interpretation of the decree. But he can make no headway on this point. First, he likely waived any procedural error by failing to make a contemporaneous objection to the district court's review of the decree during the hearing and, instead, engaging in a debate over the substantive effect of the

17

decree. See K.S.A. 60-404 (contemporaneous objection required to preserve claim evidence erroneously admitted). Second, Doyle did not make the divorce decree part of the district court record, and, in turn, it is not included in the record on appeal. Without the decree, we have no way to determine whether the district court misconstrued its terms and Doyle's responsibility for the Nordstrom debt. Doyle, as the party raising the issue on appeal, had the obligation to furnish a record from which we could assess his claimed error. We simply cannot here. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013); *In re K.M.H.*, 285 Kan. 53, 82-83, 169 P.3d 1025 (2007). For that reason, I agree we must affirm the district court, and I, therefore, join in the judgment.